Law, Appellant, *v.* Atlantic Coast Line Railroad Company.

Argued November 17, 1950.   Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Milford J. Meyer,* with him *Norman H. Abrahamson* and *Meyer, Lasch, Hankin & Poul,* for appellant.

*H. Francis DeLone,* with him *Barnes, Dechert, Price, Myers & Clark,* for appellee.

OPINION BY MR. JUSTICE BELL, March 21, 1951:

Plaintiff brought an action in trespass for personal injuries sustained on November 19, 1948, *in Miami, Florida,* while he was employed as a pantry-man waiter on defendant's interstate train. *Plaintiff is not a resident* of Pennsylvania nor are any of the witnesses to the accident. *Defendant is a foreign railroad corporation* incorporated under the laws of Virginia and having its principal office in Wilmington, North Carolina. Defendant is not registered to do business in Pennsylvania, and has designated no agent upon whom process may be served in Pennsylvania. The summons in this case was served on the General Agent of the defendant at the Freight Office in Philadelphia.

The court sustained preliminary objections (filed under Pennsylvania Rule of Civil Procedure No. 1017 (b) (1)) to the Complaint which was brought under the Federal Employers' Liability Act, and set aside the service of process on the ground that *defendant* corporation *was not "doing business" in Philadelphia* County under Rule 2179 (a) of the Pennsylvania Rules of Civil Procedure, which establishes the venue in actions against corporations.

While defendant was doing considerable business, as we shall see, in Philadelphia County, the question involved is whether it was "doing business" within the meaning of our decisions concerning service of process, and whether to sustain this suit would constitute an unreasonable burden on interstate commerce in violation of Article I, Section 8 of the Constitution of the United States.

It is well settled that whether a state court has jurisdiction of an action brought therein under the Federal Employers' Liability Act is to be determined

by the state or local law and not by federal laws: *Herb v. Pitcairn,* 324 U. S. 117, 120; *Second Employers' Liability Cases,* 223 U. S. 1, 59; and *Douglas v. New York, New Haven & Hartford R. R.,* 279 U. S. 377.

"There is no general principle which conclusively establishes in every case what constitutes 'doing business'. Each case is governed by its own particular facts. Mere solicitation of business within the commonwealth does not in itself constitute the 'doing of business'. It must be *'solicitation plus other activities :'* International Shoe Co. v. State of Washington, 326 U. S. 310; Frene v. Louisville Cement Co., 134 Fed. 2d 511":* *New v. Robinson-Houchin Optical Co.,* 357 Pa. 47, 49, 53 A 2d 79.

We shall therefore briefly summarize the important pertinent facts from the lengthy stipulation and supplemental stipulation of facts filed by the parties:

Defendant operates a railroad as a common carrier of passengers and freight in six southern states, the northernmost of which is Virginia. It has never owned or operated any railroad line, station, terminal, yard, shop or other transportation facilities in Pennsylvania. Passenger and freight cars owned by it travel between New York City and Washington, D. C., through Philadelphia, in interstate commerce, as a part of trains operated by the Pennsylvania Railroad Company.

Defendant has maintained for a number of years a passenger office and a freight office in Philadelphia, *for the purpose of soliciting business* in Eastern Pennsylvania, Delaware and Southern New Jersey, from persons in this area who wish to travel or ship over defendant's lines. At the time of institution of suit there were three employees in the passenger office, including a "Division Passenger Agent", and four employees in the freight office, including a "General

---

* Italics throughout, ours.

Agent". These employees are hired and subject to discharge only by the home office of defendant in Wilmington, North Carolina, on the recommendations of the Division Passenger Agent or the General Agent, respectively. Each office in Philadelphia is leased in the name of the defendant, the lease being executed in Wilmington. Defendant owns the office furniture in the local offices; its name appears on the doors of the two offices; it is listed in the local telephone directory, and its local address and telephone number appear on its letter-head. No contracts are made by the local office. Defendant maintains no local bank account and all expenses, including rent, salaries, etc., are paid by checks from the Home Office, drawn on Wilmington banks; supplies for both local offices are bought by and shipped from defendant's Home Office.

The local freight office solicits outbound and inbound freight business and gives such information to shippers as will induce them to patronize defendant's lines. Employees of this office call on from 3700 to 4000 prospective customers in the territory per year and send monthly reports to the Home Office showing the total freight tonnage from this area destined to travel over defendant's lines. In 1947 17,000 carloads of freight originated in this area. *It does not appear what percentage this was of the total freight carried by defendant, or how much of it originated in Philadelphia County.* The freight office handles no cash, way bills or bills of lading, but does trace several hundred lost or delayed shipments per year by telephone or wire inquiries to offices of defendant located in the South.

Defendant has an office in Pittsburgh, the activities of which are substantially the same as those in Philadelphia.

The aforesaid facts are very similar to the facts in *Shambe v. Delaware & Hudson R. R. Co.*, 288 Pa. 240, 135 A. 755 and *Green v. Chicago, Burlington & Quincy*

*Ry.,* 205 U. S. 530, which we shall hereinafter discuss.

The passenger office endeavors to "drum up" business throughout the territory and to get groups of passengers, such as athletic teams and convention-bound parties, as well as individual passengers to travel on defendant's lines. Information pamphlets such as railroad maps and time tables are distributed at this office. If complaints are made by passengers residing in the territory, the Home Office notifies the Philadelphia Office, which in turn contacts the complaining parties and attempts to pacify them. No adjustments are handled through the local office.

When requests for passage over defendant's lines are received, the prospective passengers are advised whether reservations are available and when they may visit the office to purchase their tickets. Tickets are obtained by the local office from the connecting line over which defendant's cars are transported to Washington, D. C. The passenger office gives defendant's "street orders" (72 hour credit extension slips bearing the name of the prospective passengers and their destinations) to the connecting line; and after cash has been received by the local office from the prospective passenger for the tickets, this cash is turned over to the connecting line, which returns the "street orders". When requested, the passenger office also obtains reservations and tickets for return northbound trips.

In 1947, between 2800 and 3000 passengers obtained tickets in the manner described above through the local office and in addition reservations were arranged for between 250 and 350 passengers who bought their tickets directly from connecting lines. *It does not appear what percentage this was of the total passenger business or how much of it was developed in Philadelphia County.*

The Supplemental Stipulation of Facts concerning dining and tavern cars which are owned by defendant and are transported in interstate commerce between New York and Washington, D. C., on the lines of the Pennsylvania Railroad Company as part of that Company's trains. Defendant is paid rental for said cars by Pennsylvania Railroad on a mileage basis and while on its lines the latter company, at its expense, absorbs the cost of interior cleaning, icing, watering, and fueling of said cars. When passenger cars pass through Philadelphia County food and drink are often served while the trains are in that County. The employees who work in these dining and tavern cars man the cars for the entire trip between Florida and New York and are paid by the defendant; but while on the lines of the Pennsylvania Railroad, that railroad has a right to control and to hire or fire them for cause. Defendant, through the Home Office, pays for all provisions and commissarial supplies, and receives from the Pennsylvania Railroad or other carrier the money which the passengers pay for the meals, beverages, etc.

The leading Pennsylvania case on the question of what constitutes "doing business" sufficient for service of process is *Shambe v. Delaware & Hudson R. R. Co.*, 288 Pa. 240, 135 A. 755; and one of the leading United States decisions on this point is *Green v. Chicago, Burlington & Quincy Ry.*, 205 U. S. 530, which was cited and quoted with approval in *Shambe v. Delaware & Hudson R. R. Co.*, supra. The facts in *Shambe v. Delaware & Hudson R. R. Co.*, 288 Pa. 240, 135 A. 755, are almost identical with the facts in the present case with respect to freight traffic; the facts in the present case as to both passenger and freight activities are almost identical with those in *Green v. Chicago, Burlington & Quincy Ry.*, 205 U. S. 530. *Both of said cases held that the defendant could not be served within the County or*

*State in question since it was not "doing business" therein.* In *Shambe v. R. R.,* supra, we laid down six requisite essentials to constitute "doing business" as required by the law of Pennsylvania, which we there said were the same as those necessary under the Due Process Clause of the Federal Constitution. The only essential element pertinent to this case was as stated on page 246 of said opinion: "(5) the business engaged in must be sufficient in quantity and quality (Rosenberg Co. v. Curtis Brown Co., [260 U. S. 516]; Green v. Chicago, Burlington & Quincy Ry. Co., [205 U. S. 530]; Connecticut Mutual Life Insurance Co. v. Spratley, [172 U. S. 602]; Bank of America v. Whitney Central National Bank, [261 U. S. 171]; Jackson v. Hillerson, 59 Pa. Superior Ct. 508, 515); . . . *The term 'quality of acts' means those directly, furthering or essential to, corporate objects;* they do not include incidental acts". The Court then held that solicitation of business was not "doing business" within the Act of 1851; and that the combined effect of all the acts performed by that defendant were collateral or incidental to its main purpose but *not directly necessary to its existence,* and consequently did not constitute "doing business" "in the sense that liability to service is incurred".

In *Shambe v. R. R.,* the defendant operated a part of its railroad in the northeastern part of Pennsylvania and was engaged in both inter- and intra-state commerce, and had registered and appointed the Secretary of the Commonwealth as its agent to accept service in accordance with the Act of June 8, 1911, P. L. 710. In this respect it was a stronger case for plaintiff than the present case, yet the Court found it was not "doing business" and could not be served in Philadelphia County, in spite of the combined effect of all its business activities therein. The only important factor which is present here, but not in *Shambe v. R. R.,* or in *Green*

*v. R. R.,* is the fact that passengers were sometimes served food or drink within Philadelphia County on a through train. This is not a material or sufficient distinction. Those cases rule the present case and we therefore hold that the defendant corporation was not "doing business" in Philadelphia County and that the service of process was correctly set aside by the court below.

Order affirmed.