550 A.2d 1320

**Joan S. PURCELL and James Purcell, Administrators of the Estate of Lindsay Hunter Purcell, Deceased,**

v.

**BRYN MAWR HOSPITAL, Marion L. Brown, D.O., Frank J. Manfrey, D.O., and Claudia Brown, R.N.**

**Appeal of BRYN MAWR HOSPITAL.**

Superior Court of Pennsylvania.

Argued June 3, 1988.

Filed Nov. 23, 1988.

Henry T. Reath, Philadelphia, for appellant.

James E. Beasley, Philadelphia, for appellees.

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN *, BECK, KELLY, POPOVICH and MELINSON *, JJ.

ROWLEY, Judge:

This is an interlocutory appeal by permission from an order overruling the preliminary objections of appellant, Bryn Mawr Hospital, as to venue in a medical malpractice action. We affirm.

On September 20, 1985, plaintiffs Joan and James Purcell, residents of Chester County, Pennsylvania, and administrators of the estate of their daughter, Lindsay Hunter Purcell, commenced the instant medical malpractice action in Philadelphia County against Bryn Mawr Hospital (Bryn Mawr), which is located in Montgomery County.[1]  Bryn

---

* Judge McEwen and Judge Melinson did not participate in the decision of this case.

1. Marion L. Brown, D.O. who has professional offices in Montgomery County, Frank Manfrey, D.O., who has professional offices in Dela-

Mawr filed preliminary objections as to venue asserting that venue was not proper in Philadelphia County because Bryn Mawr does not "regularly conduct business" in Philadelphia as required by Pa.R.C.P. 2179(a)(2). The trial court ordered the parties to conduct depositions on the issue of venue.

Upon completion of the depositions, the trial court entered an order on April 23, 1986, overruling Bryn Mawr's preliminary objections. A motion for reconsideration of the April 23, 1986, order was denied. However, in response to a subsequent petition filed by Bryn Mawr for leave to appeal the interlocutory order of April 23, 1986, the trial court vacated its April 23, 1986, order. On June 27, 1986, the court entered an order again overruling Bryn Mawr's preliminary objections as to venue and certifying that its order involved a controlling question of law as to which there were substantial grounds for differences of opinion. On October 24, 1986, this Court granted Bryn Mawr's petition for permission to file an interlocutory appeal. This case was listed for argument before an en banc panel of our Court.

The sole issue before us is whether or not venue is proper in Philadelphia County in the instant case. Upon carefully reviewing the arguments and briefs of all parties and upon close examination of the original record, we conclude that the trial court's determination that venue is proper in Philadelphia is supported by the unique facts in this case and is in accord with prior precedent. We therefore affirm the order.

## I. FACTS

The relevant facts in the present case, which was commenced in Philadelphia County, are as follows. The plaintiffs reside in Chester County; Bryn Mawr is located in Montgomery County; and the other defendants have pro-

ware County, and Claudia Brown, R.N., who is believed to be a resident of the State of Florida were also named as defendants but have not participated in the instant appeal.

fessional offices or reside outside of Philadelphia County. Bryn Mawr treats all of its patients in Montgomery County and does not transfer them to other hospitals located in Philadelphia in order to provide special care. Bryn Mawr maintains a listing in the Philadelphia County Yellow and White Pages of the telephone book. Bryn Mawr also places advertisements periodically in the Philadelphia Inquirer. Bryn Mawr purchases various supplies from businesses in Philadelphia County.

Bryn Mawr also has contracts with several hospitals/medical schools located in Philadelphia County, including Jefferson Medical College, (Jefferson) University of Pennsylvania, and Temple University Hospital. The nature of the agreements with these Philadelphia County hospitals/medical schools is similar: students enrolled in residency programs in the medical schools of these Philadelphia County hospitals serve rotations, varying in duration from several months to a year, at Bryn Mawr. In exchange for the services of the residents, Bryn Mawr pays the appropriate other medical school/hospital a sum equal to the salary of the resident plus a percentage of the salary for fringe benefits. Bryn Mawr also either provides professional liability coverage to the resident or pays a fee to the appropriate hospital/medical school to cover the professional liability expense for the resident incurred by the hospital/medical school.

By the express terms of the agreement between Bryn Mawr and Jefferson in Philadelphia County, the establishment of the "cooperative academic program of medical education and training, to be known as the 'Jefferson–Bryn Mawr Education Program' " was established for the following purposes:

> WHEREAS Bryn Mawr desires to continue and improve the excellence of its medical and community services, desires to enlarge its educational responsibilities and believes that both can be achieved best by an affiliation with a medical school and participation in a well organized program of medical education; and

WHEREAS Jefferson operates a medical college, general hospital, College of Graduate Studies, and College of Allied Health Sciences at Philadelphia, Pennsylvania, and shares with Bryn Mawr common goals of patient care, education and research and community services; and

WHEREAS, Jefferson wishes to cooperate toward these common goals by developing joint programs for the education of undergraduate medical students and house staff, and by promoting continuing medical education and research, communications and cooperative programs of patient care and community service;

Now therefore, the parties hereto, intending it to be legally bound, agree as follows:

The agreement further provides that Jefferson "shall assign medical students to participate in the program at Bryn Mawr" in such numbers and for such periods of time as both hospitals shall agree to. Bryn Mawr must provide from its own staff a Director of Medical Education and a Program Director for each participating department of the Hospital. Furthermore, any physician at Bryn Mawr who participates in the program must be approved by Jefferson as a member of Jefferson's faculty and the physician must accept appointment to the Jefferson Medical College faculty. When the position of Director of Medical Education at Bryn Mawr becomes vacant, the search committee for a successor Director at Bryn Mawr shall include the Dean of Jefferson or his designee.

## II. LEGAL ARGUMENTS

■ Before examining these facts in light of the arguments of the parties and the relevant law, we note that our scope of review of an order determining whether a corporation regularly conducts business in a particular county, and, therefore, whether venue is proper under Pa.R.C.P. 2179 is limited. Such a determination depends on the individual facts of each case, and we cannot reverse a trial court's determination when its conclusion is a reasonable one in

view of the facts. *Monaco v. Montgomery Cab Co.*, 417 Pa. 135, 208 A.2d 252 (1965).

The primary issue before us is whether or not venue is proper in Philadelphia County. In an action against a corporation the Rules of Civil Procedure provide that venue lies in and only in:

(1) the county where its registered office or principal place of business is located;

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose; or

(4) a county where a transaction or occurrence took place out of which the cause of action arose.

Pa.R.C.P. 2179(a)(1)–(4). In the present case, it is undisputed that the principal place of business of Bryn Mawr is not in Philadelphia County, that the cause of action did not arise in Philadelphia County, and that no transaction or occurrence out of which the cause of action arose took place in Philadelphia County. However, the parties dispute whether Bryn Mawr "regularly conducts business" in Philadelphia County. Therefore, we must determine whether the trial court erred in concluding that the activities of Bryn Mawr in this case come within the meaning of "regularly conducts business" in Rule 2179(a)(2).

Upon reviewing the facts of this case, which include that Bryn Mawr admittedly purchases essential materials and supplies from Philadelphia County without which it would be unable to provide medical services to its patients; that Bryn Mawr presently has and has had for many years an "affiliation" with Philadelphia County medical schools/hospitals, the express purpose of which is to "continue and improve the excellence of its medical and community services" and "to enlarge its educational responsibilities;" that because of the "affiliation" between Bryn Mawr and the Philadelphia County medical schools/hospitals, Bryn Mawr is able to improve the quality of care it can provide its patients, and thereby increase the number of patients who seek medical treatment from Bryn Mawr as well as maintain or improve the quality of treatment avail-

able in Philadelphia County hospitals as a result of the training the residents receive during their rotation at Bryn Mawr before they return to the Philadelphia County medical schools/hospitals; we find ample evidence in the record to support the trial court's conclusion that venue in Philadelphia County in the present case is proper because Bryn Mawr "regularly conducts business" in Philadelphia County.

Bryn Mawr and the amici challenge the trial court's conclusion that Bryn Mawr regularly conducts business in Philadelphia County for purposes of venue on three general bases. First, they contend that to find that Bryn Mawr regularly conducts business in Philadelphia County is contrary to the stated public policy behind Rule 2179. Secondly, they argue that applying established case law to the facts of this case, Bryn Mawr does not regularly conduct business in Philadelphia County. Finally, they set forth a host of policy reasons why we should not conclude that venue is proper in Philadelphia County.

### A. Rule 2179 Policy

Bryn Mawr's first basis for asserting that the trial court erred is that the trial court's decision was contrary to the stated policy behind Rule 2179. That policy, as set forth by the Supreme Court in *Burdett Oxygen Co. v. Wolfe & Sons, Inc.*, 433 Pa. 291, 249 A.2d 299 (1969), is:

> to permit a plaintiff to institute suit against the defendant in the county most convenient for him and his witnesses and to assure that the court selected had a substantial relationship to the controversy between the parties and was thereby a proper forum to adjudicate the dispute.

*Burdett, Id.*, 433 Pa. at 295, 249 A.2d at 302.

■ Bryn Mawr asserts on appeal that venue in Philadelphia County in this case is not convenient to plaintiffs or their witnesses because the plaintiffs reside in Chester County. However, Bryn Mawr's objection to venue in this case is based on its argument that Philadelphia County is not an *authorized* forum in which to bring the present

action. Bryn Mawr has never asserted that venue should be transferred from Philadelphia County to Montgomery County under the doctrine of *forum non conveniens* as provided for under Rule of Civil Procedure 1006(d)(1). On the contrary, throughout its preliminary objections to the complaint, Bryn Mawr repeatedly and exclusively asserts that venue in Philadelphia County is *improper.* In resolving the issue actually raised by Bryn Mawr as to whether or not venue is *proper* in Philadelphia County under Rule 2179(a)(2), our only concern is whether it is *permissible* to bring the action in Philadelphia County. Whether or not venue *is more convenient* in Philadelphia County is entirely irrelevant to our determination of whether or not the trial court erred in denying Bryn Mawr's preliminary objections to venue based on Rule 2179(a)(2), and therefore would be applicable only upon consideration of a request for change of venue based on the doctrine of *forum non conveniens,* which request has not been made in this case.

■ Moreover, there is nothing in the record presently before us to support the substantive aspects of Bryn Mawr's argument that Philadelphia County is an inconvenient forum. While there is no dispute that the plaintiffs reside in Chester County, Bryn Mawr has pointed to no evidence in the record, and we have found none, which supports its bald conclusory assertion that because the plaintiffs live in Chester County, Philadelphia County is in fact an inconvenient forum for them or their witnesses. The plaintiffs may find it more convenient to travel to Philadelphia County rather than Montgomery County where Bryn Mawr contends that the action should be brought, and Philadelphia County may be more convenient to witnesses, either expert or lay, which the plaintiffs may want to use. We therefore not only find that the claim that Philadelphia County is inconvenient to the plaintiffs and their witnesses is wholly irrelevant to the issue which Bryn Mawr has raised, but also that there is nothing in the record presently before us to support it.

■ Bryn Mawr and the amici also argue that Bryn Mawr's limited contacts with Philadelphia County bear no relationship to the underlying cause of action in this case, and therefore to find that venue is proper in Philadelphia County is contradictory to that part of the public policy expressed in Rule 2179 that there be a substantial relationship between the forum and the controversy. Bryn Mawr asserts that its telephone listings and advertising did not result in the plaintiffs seeking the services of Bryn Mawr, that its purchase of supplies and materials from Philadelphia County businesses is only incidental to its corporate objective, and that no resident placed at Bryn Mawr was involved in the care and treatment which are at the heart of the malpractice action in this case. Therefore, it argues, there is no relationship between Philadelphia County and the present action.

Bryn Mawr would have us hold that whatever connections it has with Philadelphia County cannot as a matter of law be construed as "regularly conducting business" in Philadelphia County because the connections which it has with Philadelphia County have nothing to do with the underlying action in the present case. However, the test for whether a corporation "regularly conducts business" in a particular county within the meaning of Rule 2179(a)(2) is not whether the corporate acts within the county relate to the particular action sued upon. Rather, as discussed below, the courts have repeatedly examined the nature of corporate acts within a particular county from the standpoint of how the acts performed therein relate to accomplishment of the *general* corporate objectives. The corporation's acts within a particular county, *if* related to the action sued upon, may be of sufficient quality to warrant the conclusion that the corporation is regularly conducting business in that county for purposes of venue. However, Bryn Mawr and the amici have cited no authority, and we have found none, which hold that the converse is true: that if a corporation's acts in a particular county, regardless of the nature or magnitude of those acts, bear no relationship to

the underlying action, the corporation does not regularly conduct business in that county for purposes of venue.

The first case to consider Rule 2179(a)(2) was *Law v. Atlantic Coast Line Railroad Co.*, 367 Pa. 170, 79 A.2d 252 (1951). In *Law*, a foreign corporation had been sued in Pennsylvania, and the corporation filed preliminary objections challenging the service of process. The trial court set aside the service of process on the theory that the corporation was not "doing business" within the meaning of Rule 2179(a)(2) which established venue in actions against corporations. In deciding whether the corporation in *Law* was "doing business" in Pennsylvania, the court followed the test for "doing business" which the Supreme Court had adopted in *Shambe v. Delaware and Hudson R.R. Co.*, 288 Pa. 240, 135 A. 755 (1927).

At issue in *Shambe* was whether Pennsylvania had *jurisdiction* over the defendant corporation. Under the applicable law, Pennsylvania only had jurisdiction over a foreign corporation if the corporation was "doing business" in the Pennsylvania county in which the corporation was sued. The court determined that to be "doing business" in a particular county, the acts of the corporation in that county must be of sufficient quality and quantity. "Quality" acts were described as being "those directly, furthering or essential to, corporate objects; they do not include incidental acts." *Id.*, 288 Pa. at 247, 135 A. at 757. "Quantity" of acts was defined as "those which are so continuous and sufficient to be termed general and habitual." *Id.*

In *Shambe* the defendant New York corporation had an agent's office in Philadelphia, and the primary function of this office was to solicit business for the corporation whose primary object was shipping freight. The agent's office would also transmit communications from customers to the New York office and vice versa. With rare exceptions, the Philadelphia agent's office did not make contracts or settle claims. As the court noted, agencies to solicit were only used as information and advertising bureaus. The Court concluded that the mere solicitation of business was only

incidental to the main purpose of the business, which was to ship freight, and therefore the corporation did not do business in Philadelphia.

The Court in *Law* not only applied the jurisdictional test for "doing business" set forth in *Shambe*, but also found that the facts in *Law* were materially indistinguishable from those in *Shambe*. In *Law*, the defendant corporation was incorporated under the laws of Virginia and had its principal office in North Carolina, but was sued in Pennsylvania. The corporation operated a railroad for passengers and freight in the South. It did not own or operate any railroad line, station, terminal, freight yard or any other transportation facility in Pennsylvania. Passenger and freight cars which it owned traveled through Philadelphia en route between Washington D.C. and New York City. The corporation maintained a freight and passenger office in Philadelphia to solicit business on its lines. Based on these facts, the court concluded that the foreign corporation was not "doing business" in Pennsylvania within the meaning of Rule 2179(a)(2).

Following its decision in *Law*, the Supreme Court next addressed the meaning of "regularly conducts business" in Rule 2179(a)(2) in *Monaco v. Montgomery Cab Company*, 417 Pa. 135, 208 A.2d 252 (1965). In *Monaco*, the defendant, which was a Montgomery County corporation, had been sued in Philadelphia County for damages resulting from an accident in Montgomery County. The defendant corporation challenged the propriety of venue in Philadelphia County, arguing that it did not conduct business in Philadelphia County because it was prohibited from picking up passengers in Philadelphia County.

Although the defendant taxi cab company was prohibited from picking up passengers in Philadelphia County, it regularly transported people from Montgomery County into Philadelphia County. Five to ten percent of its gross fares were for such trips. Applying the jurisdictional quality and quantity analysis adopted and followed in *Shambe* and *Law*, the court found that driving passengers into Philadelphia

County was an act directly essential to and in furtherance of the corporate objectives, and that it was done habitually. Therefore the court concluded that the defendant corporation's acts in Philadelphia County were of sufficient quality and quantity to constitute "regularly conducting business" in Philadelphia under Rule 2179(a)(2).

Especially significant in *Monaco,* is the fact that the court held that the cab company was regularly conducting business within Philadelphia County for purposes of venue under rule 2179(a)(2) even though no facts recited in *Monaco* demonstrate that the five to ten percent of the cab company's business was directly related to the underlying action. Nothing in *Monaco* suggests that the plaintiff was himself a resident of Philadelphia County, or that in this particular case, the plaintiff's ultimate destination, cut short by the accident, was Philadelphia County. The accident did not occur in Philadelphia County. Therefore, without indicating that there was any relationship between Philadelphia County and the underlying action other than the simple fact that the defendant corporation at times, *which may all have been unrelated to the underlying cause of action,* regularly conducted business in Philadelphia County, the court held that for venue purposes, the defendant corporation regularly conducted business in Philadelphia County.

The next significant appellate case to require an interpretation of Rule 2179(a)(2) was *Burdett Oxygen Co. v. Wolfe & Sons, Inc.,* 433 Pa. 291, 249 A.2d 299 (1969). In *Burdett,* the plaintiff was a Montgomery County corporation which had entered into a contract with the defendant corporation (located in Dauphin County) by the terms of which the Dauphin County corporation agreed to purchase its requirements for certain types of gases from the Montgomery County corporation. When the Montgomery County corporation thought that the Dauphin County corporation had breached the contract, it sued the Dauphin County corporation in Montgomery County. The Dauphin County corporation filed preliminary objections to venue asserting that

venue was improper in Montgomery County because it did not conduct business there.

The Dauphin County corporation relied primarily on a trial court decision in *Gehris v. Pocmont Hotels Corp,* 43 D. & C.2d 565 (1967), to support its argument. In *Gehris,* the trial court had held that transactions involving the furnishing of goods and services to customers was a "directly essential" transaction, whereas transactions by which a business acquired the resources to be able to serve the customers were "indirectly essential" ones. The Court in *Burdett* found this distinction to be artificial and contrary to the purpose of Rule 2179 which it stated as being

> to permit a plaintiff to institute suit against the defendant in the county most convenient for him and his witnesses and to assure that the court selected had a substantial relationship to the controversy between the parties and was thereby a proper forum to adjudicate the dispute.

*Burdett, supra,* 433 Pa. at 295, 249 A.2d at 302. Without further discussion, the Court thereupon concluded that by purchasing the gases in Montgomery County which were necessary for it to conduct its distribution business, the Dauphin County corporation was doing business in Montgomery County. Furthermore, the Court also concluded that the Dauphin County corporation *regularly* conducted business in Montgomery County because the contract it had with the plaintiff corporation for certain gases was a requirements contract for a period in excess of ten years.

In determining that the Dauphin County corporation was doing business in Montgomery County in *Burdett* because its purchase of gases from a supplier in Montgomery County was necessary for carrying on its distribution business, the Supreme Court did not discuss the jurisdictional quality and quantity test which it had previously used in *Law* and *Monaco.* It nevertheless noted the relevance to a venue problem under Rule 2179(a)(2) of decisions interpreting "doing business" for jurisdictional purposes. In a footnote in *Burdett,* the court stated that under a new amendment to

the Business Corporation Law, "doing business" for purposes of jurisdiction was defined in part as doing an act or series of acts within the Commonwealth with the intention of initiating a series of acts if the purpose is "pecuniary benefit." The Court recognized that the statute was not controlling in *Burdett*, but noted that it indicated a "liberalizing trend in an analogous area similar to the one Rule 2179 has created here." *Burdett, supra*, at 296, n. 3, 249 A.2d at 302, n. 3.

Since the decision in *Burdett*, the Superior Court has had an opportunity to determine what constitutes "regularly conducts business" under Rule 2179(a)(2) in yet a different factual situation. In *Deeter–Ritchey–Sippel Assoc. v. Westminster College*, 238 Pa.Super. 194, 357 A.2d 608 (1976), Westminster College, located in Lawrence County, was sued in Allegheny County by Deeter–Ritchey–Sippel, an architectural firm, for breach of contract with regard to a new building to have been constructed on the Lawrence County campus. The College filed preliminary objections challenging venue in Allegheny County under, *inter alia*, Rule 2179(a)(2). The architectural firm argued that the College regularly conducts business in Allegheny County because it solicits funds there, it recruits students there, and the Board of Trustees meets there. The Court rejected all three of these factual bases of "doing business."

Without citation to any other cases addressing the issue of what constitutes "conducting business" under Rule 2179(a)(2), and without discussion of or citation to cases determining what constitutes "doing business" for purposes of jurisdiction, the court determined that solicitation of funds was not "conduct" of business of an educational institution even though the inflow of contributions is essential to survival of a small college. The Court noted that to hold that the solicitation of funds was "conducting business" would subject a college to defending suits in every county and state from which a friend or alumnus sent a contribution. Likewise without citation to any authority, the court determined that the recruiting of students was not

"conducting business" even though it was important and necessary to the college. Finally, as to the holding of Board of Trustees meetings in Allegheny County, the court quoted the purpose of Rule 2179 set forth in *Burdett, supra,* and concluded that in light of that purpose "the situs of corporate policy making is insufficient alone to satisfy the standard of 'regularly conducts business.' The center of locations of operational activity are ... more pertinent." *Deeter–Ritchey–Sippel, supra,* 238 Pa.Superior Ct. at 199, 357 A.2d at 611.

This review of the case law concerning the test for whether a corporation "regularly conducts business" in a particular county leads us to conclude that the stated policy behind Rule 2179, to "assure that the court selected had a substantial relationship to the controversy," relates to subdivision (a)(2) of Rule 2179 by requiring that the corporation which has been sued have sufficient connection to the county, rather than that the particular corporate acts which directly relate to the underlying cause of action have a sufficient nexus to the county.

In *Law,* the test applied by the court to determine whether venue was proper was whether the acts of the corporation in the forum selected by the plaintiff directly furthered or were essential to the corporate objects. The Court did not address the issue of whether the particular acts of the corporation in the forum selected by the plaintiff related to the underlying cause of action. Similarly, in *Monaco,* the Court determined that the defendant corporation's acts in Philadelphia County furthered the corporate goals and therefore the defendant corporation regularly conducted business in Philadelphia County for venue purposes. No mention was made as to whether the acts of the corporation in Philadelphia County which furthered its corporate goals were in any manner related to the underlying action.

Later in *Burdett,* the Court rejected as irrelevant any distinction between a corporation selling its products or purchasing its materials in order to sell its goods on the basis that selling is directly related to corporate goals, and

purchasing the materials with which to enable the corporation to sell its goods is merely incidental to its corporate objective. Instead, the court focussed on the fact that the purchase of gasses by the defendant corporation by one of its suppliers was necessary for the defendant corporation to engage in its distribution business.

Finally, in *Deeter–Ritchey–Sippel,* the court rejected, as had the court in *Shambe* and *Law,* the solicitation of business, i.e., students, as well as the mere solicitation of funds as being the conduct of a college's business. It also refused to find that the college's Board of Trustee's meetings and decisions *alone* constituted "doing business" for venue purposes.

■ In the present case, while the concerns of Bryn Mawr and the amici, that Bryn Mawr's particular contacts with Philadelphia County do not relate to the underlying malpractice action, may be relevant to an inquiry under subsections (3) or (4) of Rule 2179(a) which concern where the cause of action arose and where a transaction or occurrence took place out of which the cause of action arose, they have no place here. We therefore find no merit to this part of Bryn Mawr's argument.

B.  Rule 2179(a)(2): "Regularly Conducts Business"

■ Bryn Mawr and the amici secondly base their contention, that the Court erred in concluding that Bryn Mawr regularly conducts business in Philadelphia County, on the fact that the circumstances in this case demonstrate that Bryn Mawr's contacts with Philadelphia County are not directly essential to its corporate purpose and therefore the quality of Bryn Mawr's acts in Philadelphia County are an inadequate foundation for venue. To support this portion of their argument Bryn Mawr and the amici rely primarily on *Shambe* and *Deeter–Ritchey–Sippel.* They argue that the fact that Bryn Mawr is listed in the Yellow and White Pages of the telephone directory for, and advertise in, Philadelphia County is merely incidental to its corporate purpose. Incidental acts, they assert, under *Shambe* are

insufficient to establish venue. Similarly, they claim that Bryn Mawr's purchase of goods and services from within Philadelphia County are matters not directly essential to the corporate purpose. As Bryn Mawr states in its brief at p. 22, "While the hospital could not function without such goods and services, its corporate objective is not the purchase and resale of such goods; it is the furnishing of medical care and treatment in Montgomery County." Bryn Mawr also contends that where its residents come from is insignificant; the important fact is where the residents perform their acts for the corporation. Finally, Bryn Mawr asserts that under *Deeter–Ritchey–Sippel,* the dispositive factor in a venue case under Rule 2179(a)(2) is where the location of operational activity is.

We recognize that under the quality and quantity jurisdictional test of *Shambe,* adopted by the Supreme Court for application to Rule 2179(a)(2) in *Law* and *Monaco,* the mere solicitation of business in a particular county does not constitute conducting business. Therefore, in the present case, the facts that Bryn Mawr maintains listings in the Philadelphia County Yellow and White Pages of the telephone book and periodically advertises in the Philadelphia Inquirer do not *alone* support the conclusion that Bryn Mawr regularly conducts business in Philadelphia County.

However, in addition to the solicitation of business by Bryn Mawr in Philadelphia County, Bryn Mawr has significant contacts with Philadelphia County which, under the established case law, compel our conclusion that it regularly conducts business in Philadelphia County. First is the fact that Bryn Mawr purchases supplies and goods from businesses in Philadelphia County in order to operate its hospital. While the nature and amount of these supplies and materials we cannot determine from the original record since Bryn Mawr refused to provide a specific answer to the interrogatory which requested this information, in its brief on appeal, Bryn Mawr concedes, as quoted above, that it "could not function" without such goods and services.

In *Burdett, supra,* the Supreme Court specifically discussed the significance of purchasing goods and materials from suppliers and the selling of one's products to one's customers with regard to the question of venue. The Court concluded that any distinction between the purchasing of materials with which to carry on one's business and the sale of one's product was an immaterial one. While *Burdett* involved a corporation whose business was *distribution* (of some unknown product or material), and the present case involves a hospital whose primary corporate objective is to provide *services* in the nature of medical care to its patients in its hospital, we find that this distinction is immaterial and that the court's analysis in *Burdett* is nevertheless applicable.

In *Burdett,* in order to carry on its business, i.e., distributing some product to its customers, the defendant corporation had to have a certain supply of particular gases. Where it obtained these gases, which were essential to operating its business, the Court held it conducted business. In the present case, Bryn Mawr claims that its primary corporate objective is the care of patients. Where it obtains the supplies and materials with which to engage in its principal corporate objective of providing health care to its patients, it is conducting business for purposes of venue. Because it concedes that it would not be able to provide the health care, which is its corporate object, without the supplies which it obtains from Philadelphia County, we conclude that it regularly conducts business in Philadelphia County.

In addition to the fact of Bryn Mawr's purchase of essential supplies and materials from Philadelphia County to support the conclusion that venue is proper in Philadelphia County, we also find the fact and nature of the contractual relationship between Bryn Mawr and at least Jefferson Medical College in Philadelphia County to be significant.[2] Bryn Mawr asserts that where its residents

---

**2.** The original record includes the master agreement establishing the cooperative program for residents between Bryn Mawr and Jefferson.

come from is immaterial and that only where the residents perform their services for Bryn Mawr is significant. However, the express purpose of the ongoing contractual relationship between Bryn Mawr and Jefferson establishes that the purpose of the contractual relationship between Bryn Mawr and Jefferson is directly to further Bryn Mawr's corporate object of providing quality medical care. The contract between Bryn Mawr and Jefferson provides that it was entered into because Bryn Mawr wanted to improve the "excellence of its *medical and community services,*" and because it thought that this could best be accomplished by "an *affiliation* with a medical school and participation in a well organized program of medical education." (Emphasis added.)

Contrary to Bryn Mawr's arguments, its relationship with Jefferson in Philadelphia County is far more than the recruitment of students by Westminster College in *Deeter–Ritchey–Sippel,* which activity was insufficient to support a finding of regularly conducting business. In *Deeter–Ritchey–Sippel,* the college *solicited* students by sending recruiters to various high schools to talk about the schools. There is no indication in the opinion in *Deeter–Ritchey–Sippel* that the college had a pre-arranged, written contractual agreement with any of the high schools from which it recruited students, by which it set forth the precise terms and conditions upon which it could accept students and which sets forth mutuality of obligations and a coordinated, detailed program which would regularly benefit both the college and the high schools involved. There is not the slightest suggestion in *Deeter–Ritchey–Sippel* that there was any form of *affiliation* between the college and the high schools from which students were solicited.

A similar agreement between Bryn Mawr and the University of Pennsylvania and Temple University Hospital has not been included. However, correspondence between Bryn Mawr and the University of Pennsylvania and Temple University Hospital which has been included in the original record recite specific arrangements indicating that Bryn Mawr's relationship with the University of Pennsylvania and Temple University Hospital is at least substantially similar to the one with Jefferson whose precise terms we know.

In the present case, however, Bryn Mawr has a contractual affiliation with Jefferson in order to assist in Bryn Mawr's primary corporate goal of providing quality health care. Its interaction with Jefferson is essential to the resident program (by the terms of the program itself) and the relationship with Jefferson has been continuing for over fifteen years. Therefore, the relationship with Jefferson affects the core of Bryn Mawr's corporate objective and has been doing so continually for an extensive period.

Furthermore, in the present case, the residents of Bryn Mawr, unlike the students who are recruited to attend classes at a college as in *Deeter–Ritchey–Sippel*, are an integral part of the operation of the hospital providing direct patient care which is the primary purpose of Bryn Mawr. The residents' contribution to the ability of the hospital to provide quality health care to its patients is no less essential to the corporation's purpose than the acquisition of materials and supplies for the hospital. Just as the geographical source of those materials and supplies is a significant factor in determining whether venue is authorized in a particular county, *Burdett, supra*, so too is the geographical source of the hospital's residents an important factor in determining where venue can properly lie. The fact that in the present case no resident actually was involved in the treatment which forms the basis of this malpractice action is irrelevant.

We also find significant that one of the purposes of Bryn Mawr's affiliation with Jefferson and its acceptance and employment of residents from Philadelphia County medical schools is to upgrade the quality of the care which Bryn Mawr can provide to its patients. The improvement in the quality of healthcare which Bryn Mawr is able to provide its patients would also have the effect of attracting more patients to its hospital thereby directly furthering its primary corporate objective. Similarly, just as Bryn Mawr is improving the quality of care available in its hospital in Montgomery County through development of the residency program with Philadelphia County medical schools, so too is

Bryn Mawr raising the quality of medical care for patients in Philadelphia County hospitals by providing medical training to residents who complete only *part* of their residency program at Bryn Mawr Hospital in Montgomery County, and who return to Philadelphia County hospitals to provide further service to hospitals and patients therein.

We conclude that under *Burdett,* Bryn Mawr unequivocally "regularly conducts business" in Philadelphia County not only because it obtains supplies and materials essential to the operation of its corporate objectives from Philadelphia County, but also because of the expressed purposes of the extensive residency agreement between Bryn Mawr and Philadelphia County hospitals/medical schools and the de facto benefits enjoyed by Bryn Mawr at its hospital in Montgomery County as a result of that program and the benefits which Bryn Mawr confers in Philadelphia County for Philadelphia County hospitals and patients as a result of its participation in the residency program. Furthermore, not only are we unpersuaded by Bryn Mawr that the present case is controlled by *Deeter–Ritchey–Sippel* because the residency program in the present case is factually distinguishable from the recruitment of college students as in *Deeter–Ritchey–Sippel,* but to the extent that *Deeter–Ritchey–Sippel* could be interpreted as being in conflict with our decision, we expressly disapprove it.

Our conclusion is further supported by our prior decision in *University of Dominica v. Pennsylvania College of Podiatric Medicine,* 301 Pa.Super. 68, 446 A.2d 1339 (1982). In *Dominica,* the plaintiff, University of Dominica (Dominica) sued the Pennsylvania College of Podiatric Medicine (PCPM) in Pennsylvania. PCPM filed preliminary objections asserting that Dominica's averment that it was registered to do business in Pennsylvania was untrue, and therefore it was not permitted to maintain an action in Pennsylvania under either the for-profit or the non-profit corporation statutes both of which prohibit a corporation "transacting business" or "doing business" in Pennsylvania to maintain an action in a Pennsylvania court unless it is a

registered corporation.³ Dominica in fact was not registered in Pennsylvania, and its attempts to become registered were unsuccessful. Dominica therefore argued that it was not doing business in Pennsylvania and consequently was not subject to the statutes in question.

In deciding that Dominica was doing business in Pennsylvania the Court looked at the following factors. First, in its pleadings, Dominica admitted that it was doing business in Pennsylvania. In addition, the court expressly noted that Dominica had actively solicited students in Pennsylvania and

> has maintained a working business relationship with several hospitals in our State. More specifically, some of the Appellant's students have served so-called "clinical rotations" in Pennsylvania hospitals with which the Appellant had established agreements. The Appellant was negotiating with other hospitals in the Commonwealth for clinical rotations and educational services for its students, for which the Appellant would pay the hospitals involved.

*Id.,* 301 Pa.Superior Ct. at 72, 446 A.2d at 1340–1341. Based on these facts, the Court determined for jurisdictional purposes that Dominica was doing business in Pennsylvania.

We recognize that *Dominica* is distinguishable from the present case in two ways. However, those distinctions do not appear to be materially significant ones. First, *Dominica* involves a question of *jurisdiction* whereas the present case raises a question of *venue*. Although venue and jurisdiction are two entirely distinct concepts, the Supreme Court has nevertheless applied the same tests to determine venue as the Court has developed to ascertain when a court has jurisdiction, *Law, supra, Monaco, supra,* and has expressly noted that cases addressing the question of "doing business" for jurisdictional purposes are analogous to cases which require an interpretation of "regularly conducts business" for venue. *Burdett, supra.* Therefore,

---

**3.** See Act of May 5, 1933 P.L. 364, art. X, § 1014, as amended 15 P.S. § 2014, and 15 Pa.C.S. § 8141.

although the issue raised in the present case relates exclusively to venue and not to jurisdiction, and although *Dominica* involved only a question of jurisdiction, we nevertheless find *Dominica* to be relevant to our discussion in the present case.

*Dominica* is also different from the present case inasmuch as the facts are the reverse of those in the present case. In *Dominica*, the Court held that the foreign school conducted business in Pennsylvania when it regularly *sent* some of its students to Pennsylvania hospitals to serve "clinical rotations," and was engaging in negotiations to expand the number of Pennsylvania hospitals in which its students could complete "clinical rotations." In the present case the question is whether a hospital which *receives* students to perform clinical rotations "regularly conducts business" in the county from which the students have been obtained. However, this distinction is one without a difference. If the sending of students from an educational institution to a hospital where the student can perform work for the hospital constitutes "regularly conducting business" in the jurisdiction of the receiving institution for the institution providing the students, then reciprocally the institution which receives the services of the resident students "regularly conducts business" in the place from which those students are obtained.

In the present case, because the "working business relationship" between Bryn Mawr and Jefferson is similar to that between the foreign school and the Pennsylvania hospitals in *Dominica*, we conclude that *Dominica* lends further support to our determination that the trial court did not err in concluding that Bryn Mawr regularly conducts business in Philadelphia County.

## C. Policy

Finally, Bryn Mawr and the amici assert that if we hold that Bryn Mawr regularly conducts business in Philadelphia County on the facts in this case and therefore that venue is proper in Philadelphia County, we will sanction blatant forum shopping by plaintiffs and will subject doctors to

being required to defend suits in counties far from either their homes or offices, and will subject corporations to suit in areas remote from where they carry on their businesses. Bryn Mawr contends that the present case is an example of forum shopping because the plaintiffs have no relationship with Philadelphia County, and the case was brought in Philadelphia County because the plaintiffs expect to obtain a higher jury verdict there. Further, by bringing the action in Philadelphia County, the Philadelphia County court system will be required to bear the costs of additional litigation which is not even related to Philadelphia County, and the case will not be more speedily resolved due to the tremendous backlog of cases in Philadelphia County.

We are unpersuaded by the argument that the present case is an example of forum shopping and will result in doctors and hospitals being sued in counties far from their homes, offices, and facilities. Under the facts of the present case, the issue is not whether venue may lie in a distant county. The three counties involved in the present case, Philadelphia, Chester, and Montgomery, are all contiguous counties within the greater Philadelphia metropolitan area. Thus the hypothetical situation set forth by the Hospital Association of Pennsylvania at page 9 of its brief, that a Cumberland County Hospital could be sued in Philadelphia County by a Tioga County hospital is entirely beyond the facts of the case which we decide today.

Even more importantly, this policy argument of Bryn Mawr and the amici concerning the liability of doctors and hospitals in far distant counties completely ignores the fact that the only issue which Bryn Mawr has raised in the present case is whether venue in Philadelphia County is *authorized.* The only matter which we are deciding by this opinion is that under the circumstances of the present case, venue is *permissible* in Philadelphia County. No party to the present action has raised the issue of whether venue *should* lie in Philadelphia County under the doctrine of *forum non conveniens,* and because the issue has not been raised and facts relevant to that issue are not part of the

record before us, this opinion does not decide the issue of whether Philadelphia County is more convenient to the parties than Montgomery County. In any case in which a party believes that the authorized forum selected by the plaintiff is so remote as to be inconvenient, that party can seek relief by petitioning for a change of venue under the doctrine of *forum non conveniens*, because the purpose for which the doctrine of *forum non conveniens* was developed was to move cases from one judicial district to another when the facts demonstrate that the judicial district in which the case has been brought is inconvenient to the parties. *Turner v. Commonwealth*, 352 Pa.Super. 154, 507 A.2d 428 (1986).

Additionally, as we have already discussed, there is no evidence in the record to support the conclusion that the present case has no relationship to Philadelphia County inasmuch as the defendant corporation regularly conducts business therein. Therefore, it is not inappropriate for Philadelphia County to bear the judicial costs of this litigation. It is possible that Philadelphia County is a more convenient forum for the plaintiffs and their witnesses, and nothing in the record demonstrates that the only reason the plaintiffs selected Philadelphia County as the forum for the present action was in order to obtain a higher jury verdict. Moreover, nothing of record establishes that a verdict by a Philadelphia County jury would in fact be higher than a verdict returned by a Montgomery County jury.

Insofar as Bryn Mawr and the amici fear that our decision will detrimentally affect physicians and hospitals and other corporations, we find little merit to their arguments. First, one must bear in mind that by our decision today we are not expanding venue in medical malpractice actions beyond areas where hospitals in fact regularly conduct business. If a hospital or corporation's relationship with a particular county is remote and isolated, our decision will have no impact upon it.

Our decision in this case is premised on the established policy supporting Rule 2179 and on an application to the

particular facts before us of the case law which has developed interpreting Rule 2179(a)(2). The Pennsylvania Supreme Court has unequivocally established that a corporation "regularly conducts business" in the county in which the corporation obtains materials, goods, and supplies essential for the corporation to accomplish its corporate objectives. In the case before us, the "materials, goods and supplies" essential to the operation of Bryn Mawr as an institution providing quality medical care includes the care which its doctors who are participating in the "Jefferson–Bryn Mawr Education Program" are able to provide Bryn Mawr's patients. The long-standing relationship between Bryn Mawr and Philadelphia County medical schools/hospitals as well as the depth of interaction between those institutions with regard to their affiliation underscores the fact that the relationship exists to further the primary corporate goals of Bryn Mawr, and consequently constitutes a regular part of Bryn Mawr's "business." Because of the unique facts in the present case, it is unnecessary, and in fact would be inappropriate for us, to speculate whether the conclusion which we reach today would be proper and just based on facts which are not presently before us as many of the policy arguments which have been raised would have us do. Therefore, finding no merit to the arguments of Bryn Mawr and the amici as to why the trial court's determination that venue was proper in Philadelphia County was inappropriate under the law or unreasonable based upon the unique facts of this case, we affirm the order of the trial court.

Order affirmed.